NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 24 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LISSETH ANDREA HURTADO PEREZ,

Petitioner,

v.

TODD BLANCHE, Acting Attorney
General,

Respondent.

No. 25-808

Agency No.
A201-418-103

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 22, 2026[**]
Pasadena, California

Before: HIGGINSON, NGUYEN, and BRESS, Circuit Judges.[***]

Lisseth Andrea Hurtado-Perez ("Hurtado-Perez"), a native and citizen of El

Salvador, petitions for review of a Board of Immigration Appeals ("BIA") decision

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Stephen A. Higginson, United States Circuit Judge for the Court of Appeals, 5th Circuit, sitting by designation.

dismissing her appeal from an order of an Immigration Judge ("IJ") denying her application for asylum, withholding of removal, and Convention Against Torture ("CAT") protection. We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1. Substantial evidence supports the agency's determination that Hurtado-Perez failed to raise a cognizable particular social group ("PSG"). To be cognizable, a PSG must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Conde Quevedo v. Barr*, 947 F.3d 1238, 1242 (9th Cir. 2020) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)). "Where, as here, the Board incorporates the IJ's decision into its own without citing *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994), this court will review the IJ's decision to the extent incorporated." *Medina-Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014). We review the agency's legal conclusions de novo and "both [its] underlying factual findings and [its] application of the INA to those findings" for substantial evidence. *Urias-Orellana v. Bondi*, 146 S. Ct. 845, 851 (2026).

The record does not compel the conclusion that any of Hurtado-Perez's proposed PSGs are recognized by Salvadoran society. Social distinction requires "evidence showing that society in general perceives, considers, or recognizes

persons sharing the particular characteristic to be a group." *Villegas Sanchez v. Garland*, 990 F.3d 1173, 1180–81 (9th Cir. 2021) (quoting *Matter of W-G-R-*, 26 I. & N. Dec. 208, 217 (BIA 2014)). Here, the record contains no evidence that Salvadoran society viewed Hurtado-Perez's PSGs as distinct.[1]

Hurtado-Perez relies on *Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013) (en banc), to argue that she is particularly vulnerable because she witnessed criminals or security forces murder members of her family. But unlike the petitioner in *Henriquez-Rivas*, Hurtado-Perez did not publicly testify against anyone in criminal proceedings. 707 F.3d at 1092 (noting the petitioner made his "social visibility" apparent by publicly testifying against gang members in court). Nor did she report the perpetrators' identities to the police. She also presents no evidence that Salvadoran law or society recognizes individuals who merely witness crimes as a distinct group. *Cf. id.* (noting El Salvador enacted a witness protection law for those "who testify against violent criminal elements"); *see also Conde Quevedo*, 947 F.3d at 1243–44 (rejecting a PSG where the

---

[1] In the proceedings before the IJ and BIA, Hurtado-Perez proposed the PSGs of "Salvadorans who witnessed criminal activity" and "family members of a crime victim." In her opening brief before this court, however, she reframes those groups as "witness[es] to a crime from alleged police officers" and "immediate family members of a crime victim of alleged Salvadoran police." To the extent that Hurtado-Perez seeks to advance a new PSG not presented to the IJ or the BIA, those issues were not exhausted. *See Bare v. Barr*, 975 F.3d 952, 960 (9th Cir. 2020).

petitioner presented no evidence that Guatemalan society recognizes those who report gang activity to police as a distinct group, including no evidence of a Guatemalan law or program protecting those who report).

Further, while "the family remains the quintessential particular social group," *Hermosillo v. Garland*, 80 F.4th 1127, 1131 (9th Cir. 2023) (quoting *Parada v. Sessions*, 902 F.3d 901, 910 (9th Cir. 2018)), the record does not compel the conclusion that family members of crime victims are perceived as "set apart, or distinct, from other persons within [Salvadoran] society . . . ." *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1077 (9th Cir. 2020) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 238). Because social distinction is dispositive to Hurtado-Perez's PSG determination, the agency's denial of asylum and withholding of removal is supported by substantial evidence. *See Reyes v. Lynch*, 842 F.3d 1125, 1132 n.3 (9th Cir. 2016).[2]

2. Substantial evidence supports the agency's determination that Hurtado-Perez failed to establish eligibility for CAT protection. She did not demonstrate that she would more likely than not be tortured in El Salvador by, or with the consent or acquiescence of, a public official. First, Hurtado-Perez's speculation

---

[2] Because the lack of social distinction is dispositive to Hurtado-Perez's eligibility for asylum and withholding of removal, we do not address her other arguments regarding those claims. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

that the men involved in the murders were soldiers does not compel a finding that she is entitled to CAT relief.  As the IJ and BIA explained, the record contains insufficient evidence that the assailants were soldiers or other state actors.  Second, although the country conditions report details widespread impunity and human rights abuses committed by both government authorities and criminal organizations, the report also describes efforts by the military and National Police to address crime.  The police also visited the crime scene and told Hurtado-Perez that they intended to gather evidence, although the record does not reveal the outcome of these efforts.  We have repeatedly held that "a general ineffectiveness on the government's part to investigate and prevent crime will not suffice to show acquiescence." *Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016).  Nor does government "acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it." *Colin-Villavicencio v. Garland*, 108 F.4th 1103, 1115 (9th Cir. 2024) (quoting *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014)).  The record thus does not compel the conclusion that Hurtado-Perez is likely to be tortured with the consent or acquiescence of a Salvadoran official.

**PETITION DENIED.**[3]

---

[3] The motion for stay of removal, Dkt. 2, is denied.